IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-00436-RBJ

In Re  AIRIC BRAD McPHERSON and
       RHONDA RENE McPHERSON,

      Debtors.

AIRIC BRAD McPHERSON and
RHONDA RENE McPHERSON,

      Appellants,

v.

GREEN TREE SERVICING, LLC,

      Appellee.

## ORDER

Debtors Airic and Rhonda McPherson appeal from orders of the United States Bankruptcy Court denying a post-confirmation motion to determine the secured status of creditor Green Tree Servicing and denying reconsideration of the first order. For the reasons set forth herein, this Court affirms the decision of the Bankruptcy Court.

**Factual Background**

The McPhersons, represented by counsel, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on January 30, 2012. Their principal asset, identified in attached schedules, was their residence in Aurora, Colorado. Record [docket entry #7-1] at 18.[1] They listed the property's current value as $145,024. R. 18. The property was encumbered by

---

[1] I will cite the Record as R.____ and use the pagination in the original record rather than in this court's electronic file.

1

two "mortgages" (probably deed of trust and hereafter simply referred to as liens) the first in favor of the Bank of America in the amount of $187,716, and the second in favor of Green Tree Servicing in the amount of $33,426. R. 18, 26.

On July 12, 2012 the McPhersons filed their proposed Amended Chapter 13 Plan using a standard printed form. R. 62. The Plan contained a notice to creditors of their right to object and a warning that if they did not object they will be deemed to have accepted the terms of the plan. The Plan also identified Green Tree, which had not filed a claim, as the holder of a secured claim subject to valuation of collateral and determination of the status of secured status under 11 U.S.C. § 506. *Id.* at 62. However, the Plan contained conflicting representations as to whether the McPhersons had also filed a motion for valuation of collateral and determination of Green Tree's secured status. On the first page of the Plan, a check box indicating that such a motion had been filed was not checked. R. 62. However, the McPhersons later represented, in standard form language in section IV(C) of proposed Plan, that they had filed such a motion:

> C. **Class Three – All other allowed secured claims** (other than those designated in Classes Two A and Two B above) shall be divided into separate classes to which 11 U.S.C. § 506 shall or shall not apply as follows:
>
> 1. **Secured claims subject to 11 U.S.C. § 506 (Real Property): Real Property:** In accordance with Fed. R. Bankr. P. 3012, 7004 and L.B.R. 3012-1, <u>the debtor has filed and served a separate motion for valuation of collateral and determination of secured status under 11 U.S.C. § 506 as to the *real* property and claims listed on page 1 of this plan and below</u>. The debtor is requesting an order that they value of the collateral is zero ($0) and the creditor's claim is unsecured. The plan is subject to the court's order on the debtor's motion. If the court grants the debtor's motion, the creditor will have an unsecured claim in either the amount of the debt as listed in the debtor's schedules or on any allowed proof of claim filed by the creditor (whichever is greater). The creditors listed on page 1 and below shall retain the liens securing their claims *until discharge under 11 U.S.C. § 1328 or payment in full.*

R. 65 (underscored emphasis added; remaining emphasis in original).

Green Tree was listed immediately below this language, i.e., was identified as a creditor having a claim secured by the McPherson's residence but subject to § 506 in the amount of $33,426 per the debtors' schedule of claims (no proof of claim having been submitted by Green Tree). However, contrary to the representation quoted above, the McPherson's had not filed a motion under § 506 for valuation of their residence or determination of the status of the Green Tree lien.

Green Tree was duly notified of the proposed Plan and of its opportunity to object, but no objection was submitted. The Bankruptcy Court issued its order confirming the Plan, in the form tendered by the McPhersons and without a confirmation hearing, on August 16, 2012.

On September 29, 2012, approximately six weeks after the Plan was confirmed, the McPhersons filed a "Motion to Determine Secured Status Pursuant to 11 U.S.C. § 506 and 11 U.S.C. § 1322(b)." R. 71-72. They asked the Bankruptcy Court to find that the Bank of America's first mortgage lien on their residence in the amount of $187,716 exceeded the value of the residence. In support of their claim that their property was worth $145,024 they submitted a market analysis by a real estate broker dated December 15, 2011. R. 74. Although the motion represented (as does the McPhersons' brief on this appeal) that the valuation was that of a real estate appraiser, the report itself shows its author does not claim to be an appraiser; that the report is not an appraisal; that its author was not rendering an opinion of fair market value; that the broker had not inspected or even seen the home and did not know its condition; but that he nevertheless believed, based on a review of on 15 "comparable sales," that the average net price per square foot strongly supports a value of $145,024; and that the assessment of the property by the Arapahoe County Assessor for $193,900 is not "remotely" supported by the preponderance of relevant sales data. R. 74.

During oral argument in this Court counsel reported that market appraisals of this type are commonly used and accepted in bankruptcy proceedings. However, my view is that the McPhersons did not present reliable evidence of the "fair market value" of the property as of December 15, 2011, much less as of the date of the confirmation of the Plan or the date of the McPhersons' their post-confirmation §506 motion. Nevertheless, they asked the Bankruptcy Court to find that Green Tree, the holder of the second mortgage lien, was unsecured. They further asked the Bankruptcy Court to order that the Green Tree lien be removed within 30 days of the order closing the case. *Id.* The motion was served on Green Tree at three different addresses in Colorado, South Dakota and Minnesota. R. 82. No objections or requests for a hearing were filed. R. 83.

The Bankruptcy Court issued a written order on November 13, 2012 denying the motion. R. 84-85. The court reasoned that (1) § 506 requires that determination of the amount of a secured creditor's claim must be made "in conjunction with any hearing . . . on a proposed plan affecting such creditor's interest;" (2) the McPhersons represented in their proposed Plan that they had filed a motion to determine the status of Green Tree's lien contemporaneously with the Plan, but they had not; (3) in the absence of such a motion the value was not determined in conjunction with a hearing on the Plan; (4) debtors are bound by the provisions of the confirmed plan and cannot revisit the issue post-confirmation; and (5) therefore, the Green Tree lien passes through unaffected by the Plan. *Id.*

On November 17, 2012 the McPherson's filed a motion asking the Bankruptcy Court to reconsider its denial of their motion. R. 86-88. This motion too was served on Green Tree. R. 90. No response was filed. On February 13, 2013 the Bankruptcy Court issued a written order denying the motion to reconsider. R. 91. It emphasized that no objections were filed to the

4

proposed Plan, which was not accompanied by a motion to determine Green Tree's status, and that the debtors were bound by the terms of their own Plan once the final order of confirmation was issued. *Id.*

This appeal was timely filed on February 15, 2013 and was ultimately assigned to this Court on August 20, 2013. The McPhersons through counsel filed an "Opening Brief." [#docket entry #11]. Green Tree was served, again at addresses in Colorado, South Dakota and Minnesota, but it did not respond. This Court requested that oral argument be set, on notice to Green Tree, but only the McPhersons' counsel appeared for the argument that was held on December 13, 2013.

**Discussion**

The issue on which this case turned in the Bankruptcy Court was whether (as that court ultimately concluded) the McPhersons' failure to obtain an order "stripping off" the "unsecured" second lien before their Plan was confirmed prevents them from doing so post-confirmation. I will get to that issue in due course, but first I need to put my toe in the murky water of the interplay between sections 1322(b) and 506 of the Bankruptcy Code.

Section 1322(b) seems fairly straightforward. It states in pertinent part that a plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2)(emphasis added). Green Tree has a claim secured only by a security interest in the McPherson's principal residence. Therefore, Green Tree's rights may not be modified by the Plan. Case concluded? No, as it turns out. There is more to the story than that.

The Bank of America – according to the numbers presented in the McPhersons' Plan -- has a senior lien that exceeds the value of the residence. Thus, the first lien would gobble up all the value that is there, leaving none to collateralize Green Tree's lien. In short, although "secured" as a matter of state law, Green Tree would be "wholly unsecured" as a practical matter. That is where § 506 comes into it. Section 506 has two subsections that offer, if not an end run around, at least a well-blocked path through a creditor's §1322 defense. Specifically,

> **§ 506. Determination of secured status**
>
> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.
>
> . . .
>
> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . .

11 U.S.C. § 506.

We can eliminate § 506(d) from the mix. It concerns claims that are not "allowed claims." But even though Green Tree did not assert a claim, the Plan lists its claim within Class Three, which pertains to "allowed secured claims." The Plan also states that "[t]he creditors listed on page 1 and below shall retain the liens securing their claims *until discharge under 11 U.S.C. § 1328 or payment in full* (emphasis in original), again suggesting that Green Tree had an "allowed secured claim." Indeed, the McPhersons did not pursue relief under § 506(d). That course likely would not have proved fruitful in any event. *See In re Woolsey,* 696 F.3d 1266 (10th Cir. 2012).

Instead, the McPhersons submit that Green Tree's claim, an "allowed claim," is deemed by § 506(a)(1) to be a "secured claim" only to the extent of the value of Green Tree's interest in the property, which is zero because the first lien exceeds the value of

6

the property. Therefore, the protection to creditors provided by § 1322(b)(2) does not come into play. It protects claims secured by a security interest in the debtor's principal residence from modification, but by virtue of § 506(a)(1), Green Tree's claim is deemed to be unsecured.

Whether that argument holds water has been the subject of a great deal of litigation. We do know, I think, that if the value of the residence is less than the amount of the first lien, leaving the first lien holder undersecured, the lien nevertheless remains in place and cannot be stripped to the extent of the undersecured portion. *See Nobelman v. American Savings Bank,* 508 U.S. 324, 328-31 (1993). Whether that holds true with respect to a wholly unsecured second lienholder, however, remains a matter that has no clear answer in this circuit. The *Woolsey* panel noted that six circuits have read *Nobelman* as suggesting that a claim must be supported by at least some value to be "secured," thus opening the door for the conclusion that § 1322(b) does not preclude modification of, i.e., stripping off, an inferior lien which is supported by no value at all. *In re Woolsey,* 696 F. 3d at 1279. Other than noting this authority, however, the panel did not go there, because the debtors in that case limited their argument to § 506(d).

Nonetheless, the position espoused by the McPhersons is the majority view at the circuit level and appears, from my review of several cases, to be the view of this district including its bankruptcy judges. I now join suit, so to speak, and conclude that Green Tree could possibly have had (depending upon the fair market value of the McPhersons' property) an "unsecured" claim for bankruptcy law purposes, albeit a secured claim under state law. That, however, is still not the end of the matter.

It appears from the Plan that the McPhersons probably intended to try to strip off the Green Tree lien. Their valuation of their property, as they claimed it to be, was less than what they have indicated to be the balance owed and secured by the first lien. They listed the lien in sections of the printed form that addressed valuation of collateral and determination of the secured status of a lien. They represented by the form's printed language that they had contemporaneously filed a motion for the determination of value and secured status. I suspect that if they had done so, and if a hearing had been held, and if competent evidence supported a fair market value of the property that was less than the first lien, then the motion might have been granted.

The fact is, however, that a motion was not filed, and the Plan was confirmed without any determination that Green Tree was an unsecured creditor. Green Tree did not, as we know, object to the Plan. One could surmise that it had no reason to, as the Plan as confirmed left its lien intact. That supposition tends to run contrary, however, to the fact that Green Tree did not object to the motion when it eventually was filed, nor did it respond to the brief or appear for the hearing on this appeal. I therefore am not prepared to speculate that Green Tree would have objected had a pre-confirmation motion been filed. Nevertheless, although I do not find it to be a terribly clear call, I plunk down on the side of affirming the decision of the Bankruptcy Judge. I do so for two reasons.

First, as the court below noted, after defining which allowed claims are "secured" and which are "unsecured" claims, § 506(a)(1) provides that the valuation of the debtor's property and the creditor's interest , i.e., the determination of secured status, "shall be determined in light of the purpose of the valuation and of the proposed disposition or use

8

of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." The McPhersons read this language as requiring that the determination of secured status must be made at a hearing, although they do not ask this Court to remand for a hearing. The Bankruptcy Court read the language as requiring that the determination of secured status must be made "in conjunction with any hearing . . . on a plan affecting such creditor's interest."

I agree with the McPhersons that the statute does not require that the matter necessarily be heard at the confirmation hearing, and I don't interpret the Bankruptcy Court as saying anything inconsistent with that. In theory, there could have been a hearing on a § 506 motion and a confirmation hearing. In reality, however, because no § 506 motion was filed, there was no § 506 hearing. In this case there was not even a confirmation hearing. Evidently no one requested a hearing, and the Plan was confirmed with the express notation that "[a]ny hearing on Confirmation of the Plan is VACATED by this (confirmation) order." R.69. But, the Bankruptcy Court's point, which I conclude was not unreasonable, is that if the McPhersons wanted a determination of secured status, they had to ask for a hearing, either separate from or during a confirmation hearing, "in conjunction with" the confirmation of the Plan. They did not do that.

My second reason is that §§ 1327 and 1329 of the Bankruptcy Code limit the circumstances under which a plan may be modified after confirmation. Section 1337 states, in pertinent part, "(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or rejected the plan." 11

9

U.S.C. § 1337(a). This makes the confirmed plan a two-way street, binding on the debtor as well as the creditor. There are, of course, exceptions, and that is where § 1339 comes in. In pertinent part, § 1339 provides,

> (a) At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to –
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan ….

During oral argument I asked whether the McPhersons contend that any § 1339 exception applies here. The response was that § 1339 does not apply, because they are not seeking a modification of the confirmed plan at all. Unfortunately for them, however, it seems to me that a modification of the confirmed plan is precisely what they are seeking. And, adding to their misfortune, I conclude that the three listed exceptions do not apply on these facts. The modification would not increase or reduce the amount of payments provided for by the Plan; nor would it extend or reduce the time for any such payments; nor would it alter the amount of the distribution to a creditor whose claim is provided for by the Plan.

I recognize that the decisions of courts that have considered the scope of § 1329 in this context are mixed. There are cases that interpret § 1329(a)(1) broadly enough to permit post-confirmation modification of a plan in a Chapter 13 case to change a creditor's status from secured to unsecured. *See, e.g., In re Jock,* 95 B.R. 75, 76 (Bankr. M.D. Tenn. 1989). There likewise are cases that interpret § 1329(a)(1) more narrowly, not permitting post-confirmation

modification to strip off an unsecured claim. *See, e.g., In re Rutt,* 457 B.R. 97, 99-101 (Bankr. D. Colo. 2010).

The law on this issue at the circuit level appears to begin and end with *In re Nolan,* 232 F.3d 528 (6th Cir. 2000). The case is factually distinguishable in that it involved a secured car loan and the debtor's post-confirmation motion to surrender the car in order partially to pay down the loan and to have the court then reclassify the remainder of the debt as "unsecured," thus to be paid in pennies on the dollar. However, the court's extensive discussion of the issue, and in my view particularly its observation that § 1329(a)(1) by its terms only addresses increases or reductions of specific payments, is persuasive. I note that a case cited and relied on in the McPhersons' brief on appeal, *In re Adams,* 270 B.R. 263 (Bankr. N.D. Ill. 2001) agrees with *Nolan* that debtors cannot use § 1329 to support a post-confirmation of a lienholder's claim. *Id.* at 270.

The Bankruptcy Court, in denying the McPhersons' post-confirmation motion, cited its previous decision in *In re Rutt,* which in turn applied *Nolan's* reasoning to the denial of a post-confirmation motion to reclassify a second lien on the debtor's residence as unsecured. The McPhersons distinguish *Rutt,* and rightly so, on the basis that the debtors was trying to reclassify a second lien on the debtor's residence that at the time of confirmation was fully secured (and therefore not modifiable per § 1322(b)(2)) to unsecured merely because the value of the residence had declined post-confirmation and no longer fully supported the lien. But that distinction misses the point of *Rutt's* application to the present case, which is that post-confirmation modification to reclassify an allowed secured claim as unsecured is not within the exceptions to the finality of a confirmation order provided in § 1329(a).

The McPhersons rely on *In re Lewis,* 875 F.2d 53 (3d Cir. 1989) and *In re Adams,* supra. In *Lewis* the debtor's residence, appraised at $24,000, was subject to a $24,000 first and a $4,000 second lien. The debtor's proposed Chapter 13 plan expressly provided that confirmation of the plan would constitute a finding that both lienholders held claims secured by both personal and real property, and that they therefore could be modified under § 1322(b)(2). After the plan was confirmed, but before the claims bar date, the holder of the second lien filed its proof of claim. The debtor then filed a motion seeking to avoid the second lien under either § 506(a) or (d). The bankruptcy and district courts both found that the debtor had waived his right to invalidate the lien. The bulk of the appellate court's opinion focused on the interplay among the so-called waiver provision, other provisions of the Plan, and §§ 506(a) and (d), none of which apply here. However, the court did note that the second lien holder also argued that a post-confirmation motion under 506(d) was untimely. The court observed that § 506(d) does not require that motions must be filed before confirmation; that the lien hold had not cited any authority in support of its position; and that the lien holder had not demonstrate any prejudice. For those reasons the court rejected the timeliness argument. 875 F.2d at 57.

The Third Circuit's opinion is reasonable, thoughtful and supportive of the McPhersons' position. On the other hand, I am unaware whether the issues concerning the "in conjunction with" language of § 506(a) or the possible applicability of § 1329 were presented in that case. Also, as the opinion indicates, there were significant indications in the plan that the parties contemplated modification of the second lienholder's claim, which is not present in the McPherson's Plan. In addition, I am uncomfortable with the quality of the evidence presented by the McPhersons to show that the value of the property was less than the first lien.[2] Finally,

---

[2] The McPhersons have not asked that the Court remand the case for the conduction of a valuation hearing. They simply ask the Court to "overturn the ruling of the Bankruptcy Court and direct the

12

it is not clear to me, even after oral argument, that stripping the lien will not have a prejudicial effect either on Green Tree or the Class Four claimants. For these reasons I ultimately do not conclude that *Lewis* compels reversal of the Bankruptcy Court in the present case.

*In re Adams,* which the McPhersons' also cite, likewise does not persuade me to their position. The court there did find that a debtor can make a post-confirmation motion under § 506(a) *if* the creditor's claim was filed after confirmation, and the debtor could not have raised the issue prior to confirmation. 270 B.R. at 270-71. Here, however, Green Tree did not file a claim. Rather, the McPhersons identified the Green Tree claim; could have had it determined before confirmation; in fact indicated that they had filed a motion to value the collateral and determine the status of the claim; but did not do so until after the confirmation of their Plan. On those facts it appears that the *Adams* court might have sustained the creditor's argument based upon "estoppel by plan confirmation."

**Order**

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED.

DATED this 17th day of December, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

---

Bankruptcy Court to enter an order removing the lien of the wholly undersecured second mortgage held by Green Tree. Even if I were satisfied that the request was timely under §§ 506(a), 1327 and 1329, I would at a minimum remand for a hearing. It is not at all clear based on a broker's December 11, 2011 preliminary market analysis that the value of the McPherson's property was not sufficient to cover the first lien and at least part of the second, in which case under *Nobelman* no stripping of the second lien could occur.